MURPHY, Circuit Judge,
concurring in part and dissenting in part.
I. INTRODUCTION
The court today holds that detailed allegations of deliberate, intentional, and purposeful endorsement of religion by a public high school teacher are insufficient to state an Establishment Clause civil rights claim. Majority Op. at 559-61. Because the majority’s ruling, reasoning, and the necessary consequences thereof are inconsistent with the Establishment Clause as interpreted by the Supreme Court, I respectfully dissent.
The majority appears to reach its conclusion by finding a distinction between Richard Torgerson’s[1] “motive” and “purpose.” In *563 light of this distinction, never before applied by this court or the Supreme Court in the context of an Establishment Clause civil rights claim, the majority holds that Torger-son’s “psychological motive” in selecting the Choir’s repertoire and performance venues is constitutionally irrelevant in determining whether he acted with the “actual purpose” of advancing religion. Id. at 560-61. Finally, taking its new constitutional rule of relevance to an extreme, the majority holds that Torgerson’s alleged past acts of religious endorsement are also irrelevant because past acts demonstrate only “psychological motive,” not “actual purpose.” Id.
As detailed below, the majority’s rigid view of pleading and proof of an Establishment Clause civil rights claim is inconsistent with Supreme Court precedent. In sharp contrast to the'constitutional distinction drawn by the majority, the Supreme Court has routinely used the terms “motive” and “purpose” interchangeably in this context. Furthermore, the cases cited by the majority for the conclusion that motive is never relevant under the endorsement test’s purpose prong are inapplicable and the policy concerns identified by the majority in support of its new rule of relevance are far from compelling. Finally, the majority’s unexplained conclusion that past acts of misconduct are always irrelevant is inconsistent with the Federal Rules of Evidence and with precedent in an analogous area of the law.
The majority has so radically restricted pleading and proof of an improper purpose as to nullify the endorsement test’s purpose prong. Beyond eviscerating the Establishment Clause as a protective citadel against religious and antireligious conduct by teachers and other public employees, the majority’s approach defies a fundamental constitutional precept: “If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.” West Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943). Unfortunately, that “fixed star” shines less brightly today.
II. THE ENDORSEMENT TEST’S PURPOSE PRONG
The Establishment Clause of the First Amendment provides that the federal government “shall make no law respecting an establishment of religion.” U.S. Const, amend. I. This prohibition extends to state governments and their political subdivisions by operation of the Fourteenth Amendment. See Wallace v. Jaffree, 472 U.S. 38, 48-49, 105 S.Ct. 2479, 2485-86, 86 L.Ed.2d 29 (1985); Engel v. Vitale, 370 U.S. 421, 430, 82 S.Ct. 1261, 1266-67, 8 L.Ed.2d 601 (1962). To determine whether Bauchman’s original or proposed amended complaint states a claim upon which relief can be granted, this court must evaluate whether Torgerson’s alleged conduct violates the Establishment Clause under the criteria set forth by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111-12, 29 L.Ed.2d 745 (1971), and its progeny.
In Lemon, the seminal Establishment Clause case, the Supreme Court.set forth a three-part test for evaluating the constitutionality of government action. Under that test, a government action will not violate the Establishment Clause as long as (1) it has a secular purpose, (2) does not have a principal or primary effect that either advances or inhibits religion, and (3) does not foster an excessive government entanglement with religion. See id.
Although the Supreme Court continued to apply the three-part Lemon test to Establishment Clause claims throughout the 1970s, Lemon came under increasing attack in the early 1980s. See Majority Op. at 551 (collecting cases attacking Lemon). In 1984, Justice O’Connor utilized the opportunity presented in Lynch v. Donnelly, 465 U.S. *564 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), to suggest a “clarification” of the Supreme Court’s Establishment Clause jurisprudence. That “clarification” has come to be known as the endorsement test.
In Lynch, a divided Supreme Court held that the city of Pawtucket’s inclusion of a creche, along with a wide array of secular Christmas decorations, in a downtown Christmas display did not violate the Establishment Clause. See id. at 685, 687, 104 S.Ct. at 1365, 1366 (plurality opinion); id. at 694, 104 S.Ct. at 1370 (O’Connor, J., concurring). In a concurring opinion, Justice O’Connor identified the bedrock principles underlying the Establishment Clause and opined that there was not a clear nexus between those principles and the criteria set out in Lemon. According to Justice O’Con-nor:
The Establishment Clause prohibits government from making adherence to a religion relevant in any way to a person’s standing in the political community. Government can run afoul of that prohibition in two principal ways. One is excessive entanglement with religious institutions .... The second and more direct infringement is government endorsement or disapproval of religion....
Our prior cases have used the three-part test articulated in Lemon v. Kurtzman, 403 U.S. 602, 612-13 [, 91 S.Ct. 2105, 2111-12, 29 L.Ed.2d 745] (1971), as a guide to detecting these two forms of unconstitutional government action. It has never been entirely clear, however, how the three parts of the test relate to the principles enshrined in the Establishment Clause. Focusing on institutional entanglement and on endorsement or disapproval of religion clarifies the Lemon test as an analytical device.
Id. at 687-89, 104 S.Ct. at 1366-68 (O’Connor, J., concurring) (citations and footnote omitted).
As to the endorsement component of her clarified Establishment Clause analysis, Justice O’Connor, noted:
The central issue in this case is whether Pawtucket has endorsed Christianity by its display of the creche. To answer that question, we must examine, both what Pawtucket intended to communicate in displaying the creche and what message the city’s display actually conveyed. The purpose and effect prongs of the Lemon test represent these two aspects of the meaning of the city’s action.
The meaning of a statement to its audience depends both on the intention of the speaker and on the “objective” meaning of the statement in the community. Some listeners need not rely solely on the words themselves in discerning the speaker’s intent: they can judge the intent by, for example, examining the context of the statement or asking questions of the speaker. Other listeners do not have or will not seek access to such evidence of intent. They will rely instead on the words themselves; for them the message actually conveyed may be something not actually intended. If the audience is large, as it always is when government “speaks” by word or deed, some portion of the audience will inevitably receive a message determined by the “objective” content of the statement, and some portion will inevitably receive the intended message. Examination of both the subjective and the objective components of the message communicated by a government action is therefore necessary to determine whether the action carries a forbidden meaning.
The purpose prong of the Lemon test asks whether government’s actual purpose is to endorse or disapprove of religion. The effect prong asks whether, irrespective of government’s actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. An affirmative answer to either question should render the challenged practice invalid.
Id. at 690, 104 S.Ct. at 1368 (O’Connor, J., concurring) (emphasis added).
In focusing specifically on the purpose prong of her endorsement test, Justice O’Connor noted that “[t]he purpose prong of the Lemon test requires that a government activity have a secular purpose.” Id. (O’Connor, J., concurring). According to Justice O’Connor, however, “[t]hat requirement is *565 not satisfied ... by the mere -existence of some secular purpose, however dominated by religious purposes.” Id. at 690-91, 104 S.Ct. at 1868 (O’Connor, J., concurring) (emphasis added). Thus, under the. endorsement test formulated by Justice O’Connor, “[t]he proper inquiry under the purpose prong of Lemon ... is whether the government intends to convey a message of endorsement or disapproval of religion.” Id. at 691, 104 S.Ct. at 1368 (O’Connor, J., concurring).
The above-quoted passages establish that Justice O’Connor, the originator of the endorsement test, believes the proper focus of the purpose prong is the subjective purpose of the governmental actor. The question then becomes whether a majority of the Court has embraced the endorsement test and, if so, whether a majority has embraced Justice O’Connor’s views of the purpose prong. Unfortunately, the task of parsing the Supreme Court’s recent Establishment Clause cases is nothing short of Herculean. A careful reading of the Court’s post-Lynch opinions, however, leads to the conclusion that a majority of the Court has adopted Justice O’Connor’s emphasis on endorsement. See County of Allegheny v. ACLU, 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989) (holding for majority of court that “[i]n recent years, we have paid particularly close attention to whether the challenged governmental practice either has the purpose or effect of ‘endorsing’ religion”). Although the Supreme Court’s discussion of the issue is perhaps opaque, recent cases support the conclusion that a majority of the Court would invalidate any governmental action subjectively intended to endorse religion.
In Wallace v. Jaffree, 472 U.S. 38, 56-61, 105 S.Ct. 2479, 2489-92, 86 L.Ed.2d 29 (1985), the Supreme Court struck down under Lemon’s purpose prong an Alabama statute authorizing a one-minute moment of silence in all public schools “for meditation or voluntary prayer.” Citing to Justice O’Con-nor’s concurring opinion and Justice Brennan’s dissenting opinion in Lynch, the Court in Wallace noted that “even though a statute that is motivated in part by a religious purpose may satisfy [Lemon’s] first criterion, the First Amendment requires that a statute must be invalidated if it is entirely motivated by a purpose to advance religion.” Id. at 56, 105 S.Ct. at 2489 (citation omitted). According to Wallace, “In applying the purpose test, it is appropriate to ask ‘whether government’s actual purpose is to endorse or disapprove of religion.’ ” Id. (quoting Lynch, 465 U.S. at 690, 104 S.Ct. at 1368 (O’Connor, J., concurring)). In concluding that the statute at issue was actually motivated by a religious purpose, the Court examined the legislative history of the statute, focusing particularly on statements of the Act’s sponsor that the motivation behind the Act was to return prayer to public schools. See id. at 56-57, 57 n. 43, 105 S.Ct. at 2489-90, 2490 n. 43.
It is clear that the Court focused on the Alabama legislature’s subjective legislative purpose, rather than some possible objectively identifiable secular purpose for enacting the statute at issue. That focus on subjective legislative purpose is mirrored and amplified in the concurring opinions of Justices Powell and O’Connor. In his concurring opinion, Justice Powell stated the test as follows: “The first inquiry under Lemon is whether the challenged statute has a ‘secular legislative purpose:’ As Justice O’Connor recognizes, this secular purppse must be ‘sincere’; a law will not pass constitutional muster if the secular purpose articulated by the legislature is merely a ‘sham.’ ” Id. at 64, 105 S.Ct. at 2494 (Powell, J., concurring) (citations omitted).
Employing the analysis she developed in Lynch, Justice O’Connor also found the Act at issue unconstitutional. As was the case with Justice Powell, it is clear that Justice O’Connor’s opinion is based on an analysis of the legislature’s subjective intent in passing the Act. See id. at 75-79, 105 S.Ct. at 2499-502 (O’Connor, J., concurring in judgment); cf. Edwards v. Aguillard, 482 U.S. 578, 585, 590-92, 107 S.Ct. 2573, 2578, 2581-82, 96 L.Ed.2d 510 (1987) (striking down Louisiana Creationism Act because legislature’s “preeminent,” “predominant,” “primary,” and “actual” purpose in passing the legislation was to advance religion); id. at 610, 107 S.Ct. at 2591-92 (Scalia, J., dissenting) (“Even if I agreed with the questionable premise that legislation can be invalidated under the Es *566 tablishment Clause on the basis of its motivation alone, without regard to its effects, I would still find no justification for today’s decision.”).
The decisions in Wallace and Edwards illustrate that in recent years the Supreme Court has focused on the subjective intent of the governmental actor in analyzing whether governmental action fails for an improper purpose.[2] Cf. Board of Educ. v. Grumet, 512 U.S. 687, 737, 114 S.Ct. 2481, 2508, 129 L.Ed.2d 546 (1994) (Scalia, J., dissenting) (noting that Court’s decision to strike down specially created school district was based, in part, on its conclusion that creation of district was “religiously motivated”). Thus, it is equally clear that this court must focus on subjective purpose in deciding whether Bauchman’s original or proposed amended complaint states a viable Establishment Clause civil rights claim.
III. THE MAJORITY OPINION
The majority begins its analysis of Lemon in a seemingly unexceptional manner. It correctly notes that this court must apply the Lemon criteria as clarified by recent Supreme Court cases which focus on whether the challenged governmental action “endorses” religion. See Majority Op. at 550-53. As to the endorsement test, the majority notes the effect prong “should evaluate whether a ‘reasonable observer,’ aware of the history and context of the community in which the conduct occurs, would view the practice as communicating a message of government endorsement or disapproval.” Id. at 552. The majority also grudgingly recites that the purpose prong encompasses a subjective analysis which “should evaluate whether the government’s ‘actual’ purpose is to endorse or disapprove of religion.” Id. at 552 (concluding that purpose prong contains a subjective test of “actual purpose” but opining that the purpose prong is an “unworkable standard” that “yields unprincipled results”). Finally, after again expressing its displeasure, the majority correctly concludes that a violation of either the subjective purpose prong or the objective effect prong is sufficient to invalidate the challenged practice under the First Amendment. See id at 552-53.
Thus, the majority’s initial articulation of the endorsement test’s purpose prong appears no different than the articulation in this separate opinion. Compare id. at 550-53 with supra Section II of this separate opinion. The majority departs, however, when it applies the endorsement test’s purpose prong to Bauchman’s proposed amended complaint. In concluding that the proposed amended complaint fails to state an Establishment Clause civil rights claim, the majority holds as follows:
[A]ny attempt to use allegations regarding Mr. Torgerson’s past conduct to evidence a continual, controlling unexpressed or psychological motive to further a religious purpose by selecting religious songs and religious performance venues oversteps what we believe are pragmatic limits on the nature of our inquiry into the “actual” purpose of the challenged conduct. Put simply, our examination must stop short of an attempt to discern a defendant’s psy *567 chological motives vis a vis his past conduct, underlying belief system or religious character. We must focus instead on objectively discernible conduct or communication that is temporally connected to the challenged activity and manifests a subjective intent by the defendant to favor religion or a particular religious belief
Majority Op. at 560 (citations omitted) (third emphasis added). The majority thereafter repeatedly declares that Torgerson’s motivation in undertaking the acts at issue here is irrelevant and, furthermore, that his alleged past acts of endorsement are only demonstrative of motive and, therefore, are also irrelevant. See id. at 559-61., Finally, the majority concludes that an Establishment Clause civil rights claim will always fail at the pleading stage unless it is supported by allegations of “conduct or statements” which are “temporally connected to the challenged activity” and “expressly (without resorting to psychoanalysis) indicate the defendant believed his” actions would serve a religious purpose. See id.
The limitations imposed by the majority on the pleading and proof of an improper purpose under the Establishment Clause are unprecedented. The distinction drawn by the majority between motive and purpose finds no support in Supreme Court precedent. Furthermore, the majority’s rigid views of allegations supportive of an improper purpose claim is at odds with the well-established rule that evidence of prior acts is relevant and admissible for the purpose of demonstrating “motive, opportunity, intent, preparation, plan, [and] knowledge.” Fed. R.Evid. 404(b).
A Supreme Court Precedent
The primary problem with the distinction drawn by the majority, and its concomitant rule of relevance, is that it finds no support in the Supreme Court’s Establishment Clause jurisprudence.[3] In fact, the Supreme Court has routinely used the terms “motive” and “purpose” interchangeably in discussing and applying the endorsement test’s purpose prong. See, e.g., Wallace, 472 U.S. at 56, 105 S.Ct. at 2489 (“For even though a statute that is motivated in part by a religious purpose may satisfy the first criterion, the First Amendment requires that a statute must be invalidated if it is entirely motivated by a purpose to advance religion.” (citation omitted) (emphasis added)); id. at 59-60, 105 S.Ct. at 2491 (“We must, therefore, conclude that the Alabama Legislature ... was motivated by the same purpose that the Governor’s answer the second amended complaint expressly admitted .... ” (Emphasis added)); id. at 64 n. 6, 105 S.Ct. at 2494 n. 6 (Powell, J., concurring) (agreeing with majority that “ ‘a statute must be invalidated if it is entirely motivated by a purpose to advance religion’”); id. at 86-87, 105 S.Ct. at 2505 (Burger, C:J., dissenting) (dissenting from majority conclusion that Alabama moment of silence statute was motivated by an improper purpose on ground that there was “not a shred of evidence that the legislature as a whole shared the sponsor’s motive” (emphasis added)); Edwards, 482 U.S. at 613, 107 S.Ct. at 2593 (Scalia, J., dissenting) (“It is clear, first of all, that regardless of what “legislative purpose” may mean in other contexts, for the purpose of the Lemon test it means the “actual” motives of those responsible for the challenged action.” (emphasis added)); id. at 614, 107 S.Ct. at 2594 (Scalia, J., dissenting) (“In all three cases in which we struck down laws under the Establishment Clause for lack of a secular purpose, we found that the legislature’s sole motive was to promote religion.” (emphasis added)); id. at 619, 107 S.Ct. at 2597 (Scalia, J., dissenting) (dissenting from majority’s conclusion of improper purpose because court had “relatively little information upon which to judge the motives of those who supported the Act” (emphasis added)); Bowen v. Ken *568 drick, 487 U.S. 589, 602-03, 108 S.Ct. 2562, 2570-71, 101 L.Ed.2d 520 (1988) (repeatedly using the terms “motive” and “purpose” interchangeably in discussing whether act violated Establishment Clause); Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 14 n. 4, 109 S.Ct. 890, 899 n. 4, 103 L.Ed.2d 1 (1989) (using terms interchangeably in concluding exemption violated Establishment Clause); Grumet, 512 U.S. at 737, 114 S.Ct. at 2508 (Scalia, J., dissenting) (noting that Court’s decision to strike down specially created school district was based, in part, on its conclusion that creation of district was “religiously motivated” (emphasis added)). As this lengthy list of citations and quotations demonstrates, the Supreme Court has never drawn the sharp distinction between motive and purpose advocated in the majority opinion and has certainly never stated that a governmental actor’s motives are immutably irrelevant to determining whether he acted with the purpose of approving or disapproving religion.
To the extent that the majority opinion relies on the Supreme Court’s decision in Board of Education v. Mergens, 496 U.S. 226, 249, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990) (plurality opinion) to support its conclusion that Torgerson’s motive is constitutionally irrelevant, the majority misreads the opinion. See Majority Op. at 560.
In Mergens, the Supreme Court upheld the Equal Access Act, 20 U.S.C. §§ 4071-4074, against, inter alia, an Establishment Clause challenge. See 496 U.S. at 247-53, 110 S.Ct. at 2370-74 (plurality opinion); id. at 260-62, 110 S.Ct. at 2377-78 (Kennedy, J., concurring in part and concurring in the judgment); id. at 262-70, 110 S.Ct. at 2377-83 (Marshall, J., concurring in the judgment). During the process of applying the purpose prong to the Equal Access Act, a plurality of the Court noted as follows: “Even if some legislators were motivated by a conviction that religious speech in particular was valuable and worthy of protection, that alone would not invalidate the Act, because what is relevant is the legislative purpose of the statute, not the possibly religious motives of the legislators who enacted the law.” Id., at 249, 110 S.Ct. at 2371 (plurality opinion). Contrary to the majority’s implicit assertion to the contrary, Mergens does not stand for the proposition that the personal motives of the sole state actor in this case, Torgerson, are invariably irrelevant under the endorsement test’s subjectively oriented purpose prong.
There is a simple, clear, and threshold distinction rendering Mergens inapplicable to cases such as this one: Mergens did not involve a § 1983 civil rights claim against an individual state actor. Mergens instead involved the constitutionality of a legislative enactment. See id. at 247-53, 110 S.Ct. at 2370-74 (plurality opinion). The majority’s reliance on Mergens in addressing the wholly distinguishable setting in which Bauchman challenges the acts of a single state actor, who was solely or principally responsible for the challenged conduct, is misplaced.
The plurality in Mergens noted that any inquiry into the purpose of a legislative enactment should be deferential and limited. See id. at 248-49, 110 S.Ct. at 2370-71 (plurality opinion). Such deference is predicated on the Supreme Court’s respect for the role of Congress as a coequal branch of the federal government. See id. at 251, 110 S.Ct. at 2372-73 (plurality opinion). Nothing in this case indicates that the Court is likely to apply a similarly deferential standard to the actions of an individual state actor in an Establishment Clause civil rights suit under § 1983. In contrast to its deference to the collective actions of legislatures, the Supreme Court has specifically noted the unique power which public school teachers may wield over students. See Edwards, 482 U.S. at 583-84, 107 S.Ct. at 2577-78. More importantly, the Supreme Court refused to analyze the motives of individual legislators in Mer-gens because the individual views of a single legislator say little about the legislative body’s collective purpose in enacting a statute. See Mergens, 496 U.S. at 249, 110 S.Ct. at 2371 (plurality opinion). Because it is the collective purpose of the legislative body that is at issue when a statute is challenged under the Establishment Clause, a particular legislator’s impermissible motives for introducing or voting for a statute are irrelevant. The motive, intent, and purpose of a state actor solely or principally responsible for conduct *569 challenged under § 1983, however, is paramount.

B. Constitutional Policy

In addition to its reliance on Mergens, the majority asserts that constitutional policy compels indifference to Torgerson’s individual motivation. According to the majority, “to impose constitutional liability on curriculum decisions based on psychological motives inferred from a teacher’s past conduct” would (1) “impermissibly subject religious teachers to a unique disability simply by virtue of their devout status”; (2) render legitimate curriculum decisions vulnerable to litigation and involve “the courts in educational policy decisions best left to the states and locally elected school boards”; (3) discourage school districts from hiring teachers known to have strong religious beliefs; and (4) “exacerbate what is already perceived to be a morass of inconsistent Establishment Clause decisions.” Majority Op. at 560-61. Unfortunately, the majority merely recites this litany and does not further elaborate.
The majority’s concern that religiously devout teachers will be disabled if their motives are deemed probative, the first and third policy arguments in the majority’s litany, confuses the concepts of belief and purpose. Torgerson’s religious beliefs are irrelevant to the determination of his purpose. See Mergens, 496 U.S. at 248, 110 S.Ct. at 2370-71 (plurality opinion). Allegations that Torger-son included religious songs in the Choir’s repertoire, that he chose religious sites for performances, or that he is a devoutly religious man are insufficient to state a civil rights claim under the endorsement test’s purpose prong. See Edwards, 482 U.S. at 605, 107 S.Ct. at 2589 (Powell, J., concurring); see also infra (concluding that Bauch-man’s original complaint fails to state a civil rights claim under the Establishment Clause). But merely because a religious person is not constitutionally presumed to have a religious purpose does not immunize that person from civil rights liability for intentional endorsement or disapproval of religion.[4]
The second, policy in.the majority’s litany, the importance of local control over education, is equally unavailing. This court has not been asked to overturn a religiously neutral state or local school board policy, but has simply been asked whether the following allegation states a claim upon which relief can be granted: an individual teacher undertook certain actions in a secondary education classroom for the direct and specific purpose of advancing religion. Answering that question in the affirmative would not necessarily subject local school boards to any special danger. . Instead, it would provide content to the Establishment Clause by prohibiting public school teachers from purposefully using their positions in the classroom to endorse or disapprove religion. Furthermore, although states and local school'boards are “generally afforded considerable discretion in operating public schools,”[5] the Supreme Court has recognized “that the discretion of the States and local school boards in matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment.” Board of Educ. v. Pico, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806-07, 73 L.Ed.2d 435 (1982). Moreover, the Court has repeatedly expressed the necessity of “monitoring compliance with the Establishment Clause in elementary and secondary schools.” Edwards, 482 U.S. at 583-84, 107 S.Ct. at 2577-78. Its reasoning is unassailable:
Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will .not purposely be used to *570 advance religious views that may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary. The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students’ emulation of teachers as role models and the children’s susceptibility to peer pressure. Furthermore, “[t]he public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools_”
Id. at 584, 107 S.Ct. at 2577-78 (quoting Illinois ex rel. McCollum v. Board of Educ., 333 U.S. 203, 231, 68 S.Ct. 461, 475, 92 L.Ed. 649 (1948) (Opinion of Frankfurter, J.)) (citations omitted) (alteration and ellipses in original).
Finally, the majority concludes its litany with the wholly unsupported suggestion that to attribute any significance to a public school teacher’s motives will “exacerbate what is already perceived to be a morass of inconsistent Establishment Clause decisions.” Majority Op. at 561. Conceding for the sake of argument the characterization of the Supreme Court’s Establishment Clause jurisprudence as being in “hopeless disarray” and in need of “[sjubstantial revision,” id. at 551, attributing constitutional significance to the motives of a public school teacher, who is principally, if not solely, responsible for the challenged conduct neither contributes to the disarray nor creates the need for revision. Consideration of the motivation of a teacher who is alleged to have deliberately, intentionally, and purposefully endorsed or disapproved of religion will not further complicate Establishment Clause jurisprudence.

C. Relevance of Prior Acts

It must be further noted the majority’s conclusion that Torgerson’s alleged past acts are irrelevant is suspect for the following three reasons: (1) the majority offers no reasoning at all for its conclusion that Tor-gerson’s past acts of misconduct only demonstrate a “continual, controlling ... motive to further a religious purpose,” Majority Op. at 560, as opposed to a continual, controlling purpose to endorse religion; (2) the conclusion of irrelevance is at odds with Federal Rule of Evidence 404(b), which specifically provides that evidence of past conduct is admissible for the purpose of proving motive, intent, and knowledge; and (3) the conclusion of irrelevance is inconsistent with analogous case law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17.
At the very heart of the majority’s decision in this case is the conclusion that Torgerson’s past conduct of endorsement is irrelevant because it only serves to demonstrate a continuing psychological “motive” to “further a religious purpose,” rather than a distinct purpose to endorse religion.[6] Majority Op. at 560; see also id. (“[Ajllegations and evidence relevant to Ms. Bauchman’s claims are limited to defendants’ conduct and events during the 1994-95 school year.”). The problem is that the majority never explains why past instances of misconduct only show a continuing motive rather than a continuing purpose to advance religion. Under the majority’s rigid rule of relevance, a past expression of “actual purpose” is apparently converted into an irrelevant expression of motive by the mere passage of time. Under this novel view of relevance, an admission by a public school teacher that she constructed the curriculum for the direct purpose of advancing religion is somehow converted into a mere expression of motive during a subsequent year, even if the curriculum in question remains unchanged. Unfortunately, the majority has not cited any support for this novel proposition. A review of the relevant Supreme Court jurisprudence reveals the reason: no support for the proposition exists. Even assuming for the sake of argument that the majority’s novel rule of past conduct is correct and allegations of Torgerson’s past conduct of endorsement are somehow con *571 verted into mere expressions of motive, that motive is still relevant to prove that Torger-son acted with an improper purpose during the year in question.
The majority’s conclusion that allegations concerning Torgerson’s past acts of endorsement are irrelevant is also inconsistent with the Federal Rules of Evidence. The Federal Rules of Evidence provide as follows: “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or acci-dent_” Fed.R.Evid. 404(b). According to at least one noted commentator, “Rule 404(b) adopts an inclusionary approach, generally providing for the admission of all evidence of other acts that is relevant to an issue in trial, excepting only evidence offered to prove criminal propensity.” Weinstein’s Federal Evidence § 404.20[3] (Joseph M. McLaughlin ed., 2d ed.1997). Furthermore, prior acts or wrongs are most frequently admitted in both civil and criminal trials to “show a pattern of operation that would suggest intent.” Id. § 404.22[l][a]; see also Turley v. State Farm Mut. Auto. Ins. Co., 944 F.2d 669, 674-75 (10th Cir.1991). As detailed below, a pattern of conduct that would suggest intent is exactly what Baueh-man alleged in her amended complaint. The majority’s conclusion that Torgerson’s alleged past acts are irrelevant is clearly at odds with the “inelusionary approach” to such evidence set forth in the Federal Rules.
Finally, the majority’s exclusion of Torger-son’s alleged prior acts of misconduct is also inconsistent with this circuit’s treatment of past misconduct in Title VII discrimination cases. Title VII cases are particularly instructive on the admissibility of past acts of misconduct. In both the Title VII arena and under the endorsement test’s purpose prong an otherwise perfectly lawful act becomes unlawful if it is undertaken with an interdicted state of mind.
This circuit has long held that evidence of prior or concurrent acts of discrimination against others is relevant and admissible to prove an otherwise unrelated claim of discrimination. See Lowe v. Angelo’s Italian Foods, Inc., 87 F.3d 1170, 1175 (10th Cir.1996); Honce v. Vigil, 1 F.3d 1085, 1090 (10th Cir.1993); Pitre v. Western Elec. Co., 843 F.2d 1262, 1266-67 (10th Cir.1988). As this court explained in Pitre, prior acts of discrimination are “ ‘quite probative’ ” of the question whether current conduct is discriminatory. 843 F.2d at 1267 (quoting Bazemore v. Friday, 478 U.S. 385, 402 n. 13, 106 S.Ct. 3000, 3010 n. 13, 92 L.Ed.2d 315 (1986)). This is especially true when, the decision-making process has remained unchanged and the same person or persons are still in charge of making the hiring, promotion, and termination decisions, a circumstance, as detailed below, closely analogous to that in the instant ease. See id. In those situations, “evidence of prior discrimination ‘might in some circumstances support the inference that such discrimination continued.’” Id. (quoting Bazemore, 478 U.S. at 402, 106 S.Ct. at 3010). In light of the analogous nature of the inquiries under Title VII and Establishment Clause claims such as this, it seems particularly incongruous to exclude past acts of misconduct under the endorsement test when those same prior alleged acts of misconduct would be admissible to prove discriminatory intent under Title VIL'

D. Conclusion

The distinction drawn by the majority between motive and purpose is at odds with the Supreme Court’s consistent practice of using the terms interchangeably. At a minimum, even if an appropriate distinction can be drawn between the two, the Supreme Court’s jurisprudence offers no support for the assertion that Torgerson’s motive, while not dispositive, is irrelevant for the purpose of pleading and proving that he acted with an improper purpose. Furthermore, the policy arguments advanced by the majority in support of its position are far from compelling. Finally, the majority’s rigid rule of relevance is inconsistent with the “inclusive approach” to such evidence embodied in the Federal Rules of Evidence and is inconsistent with this circuit’s precedent in the analogous area of Title VII.
*572 IV. APPLICATION OF THE ENDORSEMENT TEST’S PURPOSE PRONG
A proper application of the endorsement test’s purpose prong justifies the district court’s dismissal of Bauehman’s original complaint for failure to state a claim. The district court erred, however, in denying Bauch-man an opportunity to amend her complaint.
A Bauchman’s Original Complaint
As aptly noted by the majority, the gravamen of Bauchman’s original complaint is as follows: the inclusion of religious songs in the Choir’s repertoire and the performance of those songs at religious sites, standing alone, constituted a violation of the Establishment Clause. Bauchman does not allege in her original complaint that Torgerson selected either the Choir’s repertoire or places of performance with the subjective purpose of advancing religion. Instead, Bauchman’s allegations are limited to an implicit claim that the actions of Torgerson had the effect of endorsing religion. See Majority Op. at 553 (explaining at length basis for Bauch-man’s original complaint). So interpreted, the district court did not err in dismissing Bauchman’s original complaint.
The inclusion of religious songs as part of a choir repertoire and the performance of a high school choir at churches, synagogues, wards, and other religious venues, standing alone, do not constitute per se violations of the Establishment Clause. See Edwards, 482 U.S. at 605, 107 S.Ct. at 2589 (Powell, J., concurring). As noted by the Fifth Circuit in Doe v. Duncanville Independent School District, 70 F.3d 402, 407 (5th Cir.1995), a large percentage of choral music is “based on sacred themes or text.” Given the prevalence of - devotional lyrics in choral music, no reasonable person could conclude that the inclusion of religious songs in the Choir’s repertoire had the effect of endorsing religion. Furthermore, no reasonable, objective person could conclude that, standing alone, the inclusion of religious venues in the Choir’s performance sites had the effect of endorsing religion. As a consequence, Bauchman’s original complaint, which does not allege Tor-gerson acted with the purpose of advancing religion, fails to state a claim upon which relief can be granted.

B. Bauchman’s Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend the pleadings after the time for amending as a matter of right “only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.” Fed.R.Civ.P. 15(a). In Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court explained the approach that district courts should take in deciding whether to permit a party to amend the pleadings:
If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be “freely given.”
Id. at 182, 83 S.Ct. at 230. This court reviews the district court’s decision to deny Bauchman’s motion to amend for abuse of discretion. See Hom v. Squire, 81 F.3d 969, 973 (10th Cir.1996).

1. Futility

The district court denied Bauchman’s motion to amend on the grounds that her proposed amendments were futile. The majority also concludes that Bauchman’s proposed amendments are futile,[7] and thus affirms the *573 district court’s denial of Bauchman’s proposed amendments. The majority’s conclusion that Bauchman’s proposed amendments are futile is based, however, on its unduly rigid view of the nature of the endorsement test’s purpose prong. Under a proper view of the Establishment Clause, Bauehman’s proposed amended complaint, by alleging that Torgerson chose the Choir’s repertoire and performance venues with the express purpose of advancing religion, along with her allegations regarding Torgerson’s twenty-year pattern of misconduct, states a claim upon which relief can be granted.[8] Accordingly, the district court abused its discretion in rejecting Bauchman’s proposed amendments as futile. See Reliance Ins. Co. v. Mast Const. Co., 84 F.3d 372, 375-76 (10th Cir.1996) (holding that abuse of discretion is established if district court’s decision is based on an error of law).
As the majority notes, Bauchman’s proposed amended complaint “clearly asserts [Torgerson’s] conduct was motivated by a religious purpose” and “contains numerous allegations to support [Bauchman s] claim that [Torgerson] has unconstitutionally promoted his religious beliefs in the classroom for over twenty years.” Majority Op. at 559-60. In particular, Bauchman’s proposed amended complaint and supporting affidavits allege that “Torgerson engaged for many years, and continues to engage, in the advocacy, promotion, endorsement and proselytizing of his religious beliefs and practices, which included requiring students to attend and participate in events during which religious worship has occurred.” The proposed amended complaint further alleges that Tor-gerson undertook this course of activity for the express purpose of endorsing religion.
In support of her allegation that Torgerson chose the Choir’s repertoire and places of performance with the express purpose of endorsing religion, Bauchman alleges a twenty-year pattern of misconduct on the part of Torgerson in the administration of the Choir.[9] This alleged misconduct included, among other allegations, the following:[10]
*574 In 1977, while employed as director of the A Cappella Choir Class at South High School in Salt Lake City, Torgerson forced the students in his Choir class to attend the offering of prayers and sacraments at LDS worship services a[s] part of the regular, required, graded public school curriculum.
During 1980, through his position as the director of the A Cappella Choir Class at South High School, Torgerson used an application form for admission to the Choir Class that inquired as to the applicant’s religious affiliation. Torgerson inquired about the applicants religious affiliations in order to limit the Choir Class to members of the Church of Jesus Christ of Latter-Day Saints (“LDS Church”) because the Choir Class regularly participated in LDS religious services, which participation included speaking and singing presentations by students. The Choir Class did not participate in the religious services of any other religious organization.
During the 1992-93 school year, when Torgerson was employed as the director of the A Cappella Choir class at West High School, Torgerson required the Choir Class to perform approximately once each month at LDS worship services.
During the 1992-93 school year, and in the years following, Torgerson frequently discussed the religious content of the many religious devotional songs he required the West High School Choir Classes to sing and used the religious content of the songs to advocate his own religious beliefs.
During the 1993-94 school year, while employed as the director of the A Cappella Choir Class at West High School, Torger-son repeatedly advocated his religion in the Choir Class, frequently stated that he was aware of and disagreed with the United States Supreme Court decisions forbidding the advocacy of religion in public school classes, and frequently stated that he would continue in his advocacy of religion in public school classes even though he knew that doing so violated established law.
During the 1993-94 school year, Torger-son required the West High School Choir Classes to practice the religious song, “Lamb of God.” During the practicing of “Lamb of God,” Torgerson turned off the lights in the classroom and, to the outrage of several students, instructed the Choir Class to visualize “Jesus dying for our sins.”
During [a] Pacific Northwest Tour in Salem, Oregon, the West High School Choir Class performed at an LDS “fireside” service, where Torgerson portrayed the Choir Class as an LDS religious choir. At the “fireside”, LDS Choir Class members “bore their testimonies” about their personal relationship with Jesus and proclaimed that the LDS Church is the only true religion. The Choir Class performed solely Christian devotional music as part of the LDS worship services.
The proposed amended complaint and attached affidavits further allege that in the year immediately preceding the 1994-95 school year, Torgerson (1) utilized the religious content of the Choir’s devotional songs to advocate his own religious beliefs; and (2) had the Choir perform at religious worship services where “LDS Choir Class members ‘bore their testimonies’ about their personal relationship with Jesus and proclaimed that the LDS Church is the only true religion.” These subsidiary allegations relate directly to Bauchman’s allegation that Torgerson chose the Choir’s repertoire and performance venues for the prohibited purpose of advancing religion.[11] Under the majority’s curious new *575 rule of constitutional relevance, these past manifestations of purpose are somehow converted into mere irrelevant expressions of motive which fail to state an Establishment Clause civil rights claim. As detailed at length above, this is a particularly thin reed upon which to base a finding of futility.
The allegations that Torgerson chose the Choir’s repertoire and performance venues for the specific purpose of advancing réligion, along with the detailed supporting allegations, state a claim upon which relief can be granted. See Jaffree, 472 U.S. at 56, 105 S.Ct. at 2489-90; Edwards, 482 U.S. at 585, 107 S.Ct. at 2578; Lynch, 465 U.S. at 690, 104 S.Ct. at 1368 (O’Connor, J., concurring). Accordingly, the district court erred in concluding that Bauchman’s proposed amendments were futile.[12] See supra note 8 (noting that the futility analysis in this case must focus on whether Bauehman’s proposed amendments state a claim upon which relief can be granted and noting that 12(b)(6) dismissals are highly disfavored). Unfortunately, the majority compounds the district court’s error and makes it the law of the circuit when it affirms the district court's finding of futility.

2. Timeliness

The district court held that Bauehman’s failure to amend her complaint prior to a ruling on defendants’ motion to dismiss and her failure to allege any “essential” facts not otherwise known prior to the dismissal of her original complaint was an alternate ground for denying Bauchman’s motion to amend. Because it concludes that Bauchman’s proposed amendments are futile, the majority decides not to reach the district court’s conclusion that Bauehman’s proposed amended complaint was untimely. See Majority Op. at 562. Nevertheless, the majority “questions] the district court’s rationale under circumstances where, as here, the court deliberately deferred ruling on [Bauehman’s] motion to amend pending the completion of additional, limited discovery related to her newly asserted theory that defendants’ conduct was primarily for the purpose of promoting or proselytizing religion.” Id.
The district court’s “question[able]” conclusion that Bauchman’s proposed amended complaint,was untimely is manifestly unreasonable. See F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1555 (10th Cir.1994) (defining abuse of discretion as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment). The fact that Bauchman did not allege any new “essential” facts in the amended complaint results from the district court’s erroneous . ruling which precluded any discovery concerning Torgerson’s pre-1994-95 conduct on the theory that such conduct was irrelevant to Bauchman’s claim under the endorsement test’s purpose prong. As indicated above, however, Torgerson’s personal intent and motivation in selecting the Choir’s repertoire and performance venues are relevant under the endorsement test’s purpose prong and Torgerson’s past conduct is relevant and potentially admissible under the Federal Rules of Evidence for the purpose of proving Torgerson’s motive, intent, and knowledge during the 1994-95 school year.
Most importantly, there is no indication in the record and no district court findings that the defendants would have been prejudiced by allowing Bauchman to amend her complaint or that the proposed amendments were the product of bad faith or a dilatory motive on the part of Bauchman. See Davis, 371 U.S. at 182, 83 S.Ct. at 230 (holding that leave to amend must be “freely given” in the absence of undue delay, bad faith, dilatory motive, or futility). In light of the absence of *576 either bad faith, a dilatory motive, or prejudice to the defendants, the district court’s decision that Bauchman’s proposed amended complaint was untimely is manifestly unreasonable.
V. CONCLUSION
Purposeful, deliberate, and intentional efforts to advance or disapprove religion violate the Establishment Clause. See Lynch, 465 U.S. at 687-90, 104 S.Ct. at 1366-68 (O’Connor, J., concurring). Bauchman’s original complaint fails to state a claim upon which relief can be granted under this standard. Her original complaint does not contain a claim that Torgerson acted with the purpose of advancing religion and none of the actions alleged in the complaint have the inherent effect of advancing religion. Bauchman’s proposed amended complaint, on the other hand, does state a claim upon which relief can be granted. The proposed amended complaint alleges that Torgerson selected the Choir’s repertoire and places of performance with the deliberate purpose of advancing religion. Furthermore, Bauch-man’s amended complaint contains numerous subsidiary allegations which detail at length Torgerson’s manifestations of that improper purpose over the previous twenty years. Despite the majority’s conclusion to the contrary, the allegations regarding Torgerson’s alleged past instances of misconduct are relevant to Bauchman’s claim of an improper purpose and are sufficient to state an Establishment Clause civil rights claim.
A proper reading of Supreme Court precedent establishes that the Establishment Clause prohibits public school teachers from utilizing their positions for the deliberate purpose of endorsing or disapproving religion. Bauchman’s proposed amended complaint states a claim for relief under this standard. The bare sufficiency of Bauch-man’s proposed amended complaint does not, however, suggest that Bauchman should prevail on the merits or that she is even necessarily entitled to a .trial on the merits. It means only that she has demonstrated the filing of her proposed amended complaint was not futile, she is entitled to discovery unconfined to the 1994-95 school year, and she should be allowed to proceed to the next appropriate test on the substantive issues under the Establishment Clause, whether that test be a motion for summary judgment or a trial on the merits. In short, the Establishment Clause issue in this case is in need of an adequate record.[13]

. Because the liability of each defendant in this case is in some sense derivative- from Torgerson’s liability, the majority opinion focuses exclusively-on the alleged conduct of Torgerson in analyzing whether Bauchman’s original or proposed amended complaint states a claim upon which *563 relief can be granted. This separate opinion does likewise. This is not to say, however, that the governmental defendant, Salt Lake City School District, is in any way responsible for Torgerson’s or the other individual defendants’ alleged unconstitutional acts under the doctrine of respondeat superior. See Monell v. Department of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978).

. According to Justice O'Connor, the Supreme Court's focus on "actual” subjective intent is the reason that so few cases are decided under Lemon 's purpose prong. Evidence of a subjective intent to advance religion is often difficult to develop. Nevertheless, Justice O'Connor, the developer of the endorsement test, seems undeterred by this fact. According to Justice O'Con-nor:
It is not a trivial matter ... to require that the legislature manifest a secular purpose and omit all sectarian endorsements from its laws. That requirement is precisely tailored to the Establishment Clause's purpose of assuring that government not intentionally endorse religion or a religious practice. It is of course possible that a legislature will enunciate a sham secular purpose for a statute. I have little doubt that our courts are capable of distinguishing a sham secular purpose from a sincere one, or that the Lemon inquiry into the effect of an enactment would help decide those close cases where the validity of an expressed secular purpose is in doubt. While the secular purpose requirement alone may rarely be determinative in striking down a statute, it nevertheless serves an important function. It reminds government that when it acts it should do so without endorsing a particular religious belief or practice that all citizens do not share.
Wallace v. Jaffree, 472 U.S. 38, 75-76, 105 S.Ct. 2479, 2499-500, 86 L.Ed.2d 29 (1985) (O'Connor, J., concurring in judgment).

. It is clear that the law generally draws a distinction between an actor's motive and his intent or purpose. See Black's Law Dictionary 1014 (6th ed.1990) (setting out differences between motive and intent). The question, however, is whether the Supreme Court has recognized that distinction in the context of the endorsement test's purpose prong and, more importantly, whether the Supreme Court has adopted a constitutional rule of relevance which makes evidence of motive invariably inadmissible to prove purpose. As detailed more fully below, the answer to both questions is no.

. To the extent that the majority’s public policy concerns focus on the dangers of considering a governmental actor’s deeply held religious beliefs, as opposed to .specific instances of past religious endorsement or disapproval, the concerns identified by the majority are not triggered in this case. Bauchman never argued on appeal that allegations regarding Torgerson's religious beliefs, either standing alone or in combination with his alleged past acts of misconduct, were sufficient to state a civil rights claim under the Establishment Clause. Instead, she has simply argued the unremarkable position that Torgerson's alleged past acts of misconduct, set out more fully below, are'relevant to the question of whether he chose the Choir’s repertoire and performance venues for the purpose of advancing religion.

. Edwards, 482 U.S. at 583, 107 S.Ct. at 2577.

. It is worth noting, albeit repetitiously, that the Supreme Court, using language identical to that rejected by the majority, has held “the First Amendment requires that a statute must be invalidated if it is entirely motivated by a purpose to advance religion.” Wallace, 472 U.S. at 56, 105 S.Ct. at 2489 (emphasis added).

. The majority apparently reaches this conclusion on a significantly different ground than did the district court. The district court concluded that both the effect and purpose prongs of the endorsement test must be viewed objectively and, therefore, "actual” purpose was irrelevant. The majority explicitly rejects the district court's mistaken construction of the endorsement test’s purpose prong, holding that Bauchman can state an Establishment Clause claim by demonstrating that the defendants' " 'actual' purpose is to en *573 dorse or disapprove of religion.” Majority Op. at 551.

. In conducting this futility analysis, it is important to be mindful of the procedural posture of this case. The district court dismissed Bauch-man’s original complaint under Fed.R.Civ.P. 12(b)(6) because that complaint failed to state a claim. On appeal, this court's analysis of futility must center on whether Bauchman’s proposed amendments, as supported by the affidavits attached to her complaint, cure the deficiencies in her original complaint. See Mountain View Pharmacy v. Abbott Lab., 630 F.2d 1383, 1386 (10th Cir.1980). Thus, the real question is whether Bauchman’s proposed amendments state a claim upon which relief can be granted. In deciding whether Bauchman’s proposed amendments state a claim,
"We will uphold a dismissal [under Federal Rule of Civil Procedure 12(b)(6)] only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.” In performing our review, we accept all well-pleaded allegations as true and construe them in the light most favorable to plaintiffs. We note that " ‘[t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.’ ”
Maez v. Mountain States Tel. & Tel., 54 F.3d 1488, 1496 (10th Cir.1995) (quotations and citations omitted).

. Bauchman’s ability to discover evidence of Tor-gerson’s past conduct was seriously hampered by the district court's ruling which limited discovery to the 1994-95 school year. The district court's order was based on its erroneous conclusion that evidence of "actual" purpose and intent was irrelevant because the endorsement test's purpose prong is viewed from an objective perspective. See supra note 7; see also supra Section III of this separate opinion (noting that Torgerson's past conduct is relevant and admissible for the purpose of proving Torgerson’s motive, intent, and knowledge during the 1994 — 95 school year).

.In reciting the lengthy list of Torgerson’s alleged past misdeeds, this separate opinion does not express any opinion on the ultimate admissibility upon a motion for summary judgment or at trial of any of the alleged past misdeeds. Nevertheless, the allegations raise a serious and substantial question about patterns of misconduct which may be admissible under Fed.R.Evid. 404(b) to prove intent, knowledge, and motive. See supra Section III of this separate opinion (discussing admissibility of Torgerson’s alleged past misconduct for purpose of proving motive, intent, or knowledge). It must be noted, however, that before these alleged misdeeds could be admitted under Rule 404(b), they would be subject to the balancing of probativeness and prejudice set out in Fed.R.Evid. 403, a task that the district court did not undertake in light of its erroneous conclusion that the endorsement test’s purpose prong operates as an objective test and its subsequent resolution of the case on the pleadings. See supra note 7 (discussing approach taken by district court).

. These subsidiary allegations are particularly significant in light of the fact Torgerson was officially reprimanded in April 1994 for offering a prayer before a Choir performance that took place at a Mormon worship service. At that service, the Choir allegedly performed only religious devotional music and Torgerson allegedly portrayed the Choir Class as an LDS religious choir. Because the Choir’s repertoire remained the same and the Choir continued to perform at religious venues during the 1994-95 school year, a reasonable inference may be that Torgerson’s pre-1994-95 expressed intent to endorse religion remained, but that his same intent was now merely unexpressed in light of the reprimand.

. As an alternative ground for concluding that Bauchman’s proposed amendments were futile, the district court concluded that Bauchman's proposed amended complaint would also be subject to dismissal on summary judgment. Although the majority does not reach the merits of the district court’s conclusion, it does note that proposed amendments may be denied as futile on this ground. Majority Op. at 561-62. The district court’s conclusion that Bauchman’s proposed amendments would not survive summary judgment is seriously flawed. As indicated above, the district court's conclusion was based on the erroneous assumption that the endorsement test’s purpose prong is viewed objectively rather than subjectively. See supra note 7. Furthermore, because the district court erred in limiting formal discovery to the 1994-95 school year, see supra note 9, it did not have an adequate evidentiary picture upon which to resolve the summary judgment question.

. In light of the majority's resolution of this case on the threshold issue that Bauchman's proposed amended complaint fails to state a claim, and in light of this dissent, it is neither necessary nor appropriate for this separate opinion to address the remaining multitude of alternative dispositive issues addressed by the parties on appeal.